[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 314.]

OFFICE OF DISCIPLINARY COUNSEL *v.* EWING.

[Cite as *Disciplinary Counsel v. Ewing*, 1998-Ohio-286.]

*Attorneys at law—Misconduct—Disbarment—Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Engaging in conduct prejudicial to the administration of justice—Engaging in conduct adversely reflecting on fitness to practice law—Disregarding the ruling of a tribunal.*

(No. 98-715—Submitted May 27, 1998—Decided September 30, 1998.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 97-5.

_____

{¶ 1} On October 14, 1997, relator, Office of Disciplinary Counsel, filed an amended complaint charging that respondent, Charles W. Ewing of Amlin, Ohio, Attorney Registration No. 0025146, had violated several Disciplinary Rules while acting as counsel for two real estate companies. Respondent filed an answer, and the matter was submitted to a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board"), which made the following findings of fact.

{¶ 2} On July 21, 1991, the state of Ohio filed a complaint and motion for preliminary and permanent injunctions in common pleas court against American Real Estate Cooperatives, CMH, Inc. ("ARC-O"), and a related company for their violations of the Ohio Consumer Sales Practices Act. By a consent order of August 29, 1991, later modified on October 16, 1991, the parties agreed to a preliminary injunction under which the companies would deposit into a "performance guaranty fund" seventy-five percent of all funds which came into their possession as a result of real estate closings until the case was resolved, and that further, the companies would not transfer assets of any kind without an order of the common pleas court.

**{¶ 3}** In April 1992, in a separate case, the court entered a judgment of $11,000 against ARC-O in favor of a former realtor of the company. Because there might be a conflict between the cases, the attorneys for the state, and respondent, who was then representing the companies, agreed that the companies would deposit their funds, including the performance guaranty fund, into respondent's trust account until the conflict could be resolved.

**{¶ 4}** On May 18, 1992, just before the trial in the suit brought by the state was about to begin, ARC-O filed a Chapter 11 case in the United States Bankruptcy Court for the Southern District of Ohio. Both the common pleas judge and the bankruptcy judge ruled that the automatic stay provisions of the Bankruptcy Code did not prevent the state's lawsuit from proceeding. Ultimately, the suit resulted in a $122,000 judgment against the companies, which was affirmed by the court of appeals.

**{¶ 5}** Early in July 1992, at the Section 341 hearing in the Chapter 11 case, the state discovered that respondent had totally disbursed the funds in the trust account. By letter in July, the state asked for an accounting with respect to the trust account. Respondent did not answer. Again, in August, the state asked for an accounting, threatening a contempt action against the company and against respondent if the accounting was not forthcoming. At the last moment respondent provided an accounting, which indicated that all the funds in the trust account had been disbursed. Without common pleas court or bankruptcy court authorization, between March and August 1992, respondent had distributed more than $40,000 from the trust account, including $10,000 as his retainer for the Chapter 11 proceedings and $600 for the bankruptcy court filing fee.

**{¶ 6}** Respondent's position was that of the funds in the trust account, twenty-five percent or $10,000 could be paid to him as a retainer for filing the Chapter 11 case, and the balance of the funds could be used by the company. However, in the order appointing respondent as counsel to the company as debtor-

in-possession in the Chapter 11 case, the bankruptcy judge specifically struck out a proposed paragraph allowing respondent to compensate himself without prior court approval. When converting the Chapter 11 reorganization case to a Chapter 7 bankruptcy case over a year later, the bankruptcy judge noted that with respect to the money in respondent's trust account, "it is highly irregular, given the outstanding state court order, to utilize these funds without some disposition from this Court. The Debtor has only recently sought some determination from this Court, after the funds have been expended."

{¶ 7} The state obtained an order from the common pleas court, finding the company and respondent in contempt for disbursing the funds and further finding them jointly and severally liable to the trust account in the amount of $40,000. After the common pleas court decision, respondent filed a motion in the bankruptcy court seeking to void any action of the common pleas court and any action to enforce the threatened contempt action. The bankruptcy judge, however, issued an "Order of Abstention" allowing the matter to proceed in the state courts. The court of appeals ultimately affirmed the judgment of the common pleas court.

{¶ 8} The panel concluded that by disbursing money from the ARC-O trust funds in his hands, respondent violated DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), (5) (engaging in conduct prejudicial to the administration of justice), (6) (engaging in conduct adversely reflecting upon the attorney's fitness to practice law), and 7-106(A) (disregarding the ruling of a tribunal). The panel noted that in mitigation, respondent presented his position that by the filing of the Chapter 11 proceeding in the bankruptcy court, Sections 542 and 543 of the Bankruptcy Code required that he pay the funds on hand to the company. The panel said that these issues had been determined adversely to respondent by the ruling of the court of appeals in the contempt case.

{¶ 9} The panel further noted that respondent had previously received a six-month suspension in *Columbus Bar Assn. v. Ewing* (1992), 63 Ohio St.3d 377, 588

N.E.2d 783, and an indefinite suspension in *Columbus Bar Assn. v. Ewing* (1996), 75 Ohio St.3d 244, 661 N.E.2d 1109, and recommended that respondent be disbarred from the practice of law in Ohio. The board adopted the findings, conclusions, and recommendation of the panel.

———————————

*Jonathan E. Coughlan*, Disciplinary Counsel, and *Harald F. Craig III*, Assistant Disciplinary Counsel, for relator.

*Charles W. Ewing, pro se.*

———————————

*Per Curiam*.

{¶ 10} We adopt the findings and conclusions of the board. Orders entered both by the common pleas court and the bankruptcy court specifically prohibited respondent from disbursing legal fees to himself from the trust funds. The order of August 29, 1991 as modified on October 16, 1991 provided that the company would not transfer assets without order of the common pleas court. In entering his 1992 order appointing respondent as counsel in the Chapter 11 case, the bankruptcy judge specifically deleted a paragraph which would have allowed respondent to compensate himself without prior court approval. Respondent therefore knew that the funds he held in his trust account could not be disbursed either to himself as legal fees or to the company for operating expenses without authorization from either the common pleas court which established the fund or the bankruptcy court which controlled the financial reorganization of ARC-O. Nevertheless, respondent chose to violate the orders of both courts.

{¶ 11} We agree with the board's recommendation. Respondent is hereby disbarred from the practice of law in Ohio. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

January Term, 1998

_____